# Exhibit A

| SUMMONS - CIVIL | STATE OF CONNECTICUT | See page 2 for instructions |
|---|---|---|

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See page 2 for instructions**

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

[ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
[X] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
[ ] "X" if claiming other relief in addition to or in lieu of money or damages.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 123 Hoyt Street, Stamford, CT 06905 | ( 203 ) 965-5307 | October 28, 2014 <br> Month / Day / Year |

| [X] Judicial District | [ ] Housing Session | G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) <br> Stamford/Norwalk at Stamford | Case type code (See list on page 2) <br> Major: **T**   Minor: **28** |
|---|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) <br> SILVER GOLUB & TEITELL, LLP, 184 ATLANTIC STREET, STAMFORD CT 06901 | Juris number (to be entered by attorney only) <br> 058005 |
|---|---|
| Telephone number (with area code) <br> ( 203 ) 325-4491 | Signature of Plaintiff (if self-represented) |

| Number of Plaintiffs: 2 | Number of Defendants: 1 | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| **First Plaintiff** | Name: MAULA, ALAAE, ADMINISTRATOR OF THE ESTATE OF HALA ALOLABI <br> Address: 20 Orlando Road, Norwalk, CT 06854 | P-01 |
| **Additional Plaintiff** | Name: MAULA, ALAAE, Individually <br> Address: 20 Orlando Road, Norwalk, CT 06854 | P-02 |
| **First Defendant** | Name: BERGWERK, SALLY R., M.D. <br> Address: 35 Old Ridgefield Road, Wilton, CT 06897 or 120 Connecticut Avenue, Nowalk, CT 06854 | D-01 |
| **Additional Defendant** | Name: <br> Address: | D-02 |
| **Additional Defendant** | Name: <br> Address: | D-03 |
| **Additional Defendant** | Name: <br> Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | [ ] Commissioner of the Superior Court <br> [ ] Assistant Clerk | Name of Person Signing at Left <br> RICHARD A. SILVER | Date signed <br> 09/30/2014 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | | For Court Use Only |
|---|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. <br> b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. <br> c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. <br> d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | | File Date |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250
Martha Jackson, 361 Canterbury Lane, FAirfield, CT 06825

| Signed (Official taking recognizance; "X" proper box) | [X] Commissioner of the Superior Court <br> [ ] Assistant Clerk | Date <br> 09/30/2014 | Docket Number |
|---|---|---|---|

(Page 1 of 2)

SILVER GOLUB & TEITELL LLP   •   ATTORNEYS AT LAW
184 ATLANTIC STREET   •   STAMFORD, CONNECTICUT 06901   •   (203) 325-4491   •   JURIS NO. 58005
THE HERITAGE BUILDING   •

RETURN DATE: OCTOBER 28, 2014      : SUPERIOR COURT

                                            :

ALAAE MAULA, ADMINISTRATOR      : J.D. OF STAMFORD/NORWALK
OF THE ESTATE OF HALA ALOLABI AND   :
ALAAE MAULA, INDIVIDUALLY        :

                                            :

V.                                       : AT STAMFORD

                                          :

SALLY R. BERGWERK, M.D.          : SEPTEMBER 30, 2014

## COMPLAINT

**FIRST COUNT:**    **ALAAE MAULA, ADMINISTRATOR OF THE ESTATE OF HALA ALOLABI**

1.    On April 9, 2013, Alaae Maula was appointed the Administrator of the Estate of Hala Alolabi by the Court of Probate, District of Norwalk - Wilton, and has duly qualified and is presently serving in that capacity.

2.    This wrongful death claim is being brought pursuant to Connecticut General Statutes §52-555.

3.    Pursuant to Connecticut General Statutes § 52-190a(b), the Clerk of the Superior Court, Judicial District of Stamford/Norwalk, has extended the statute of limitations on claims arising from plaintiff's injuries, as alleged in this Complaint, by ninety days (Exhibit A).

4.    Pursuant to Conn. Gen. Stat. § 52-190a, attached hereto is a certificate of plaintiff's counsel stating that reasonable inquiry gives rise to a good faith belief that grounds exist for an action against defendant (Exhibit B) and written and signed opinions from similar health care

providers stating that there appears to be evidence of medical negligence by defendant and

providing detailed bases for the formation of those opinions (Exhibit C).

5.      At all times relevant to this action, the defendant Sally R. Bergwerk, M.D. (hereinafter,

"Bergwerk") was and is to the present time a duly licensed physician engaged in the practice of

medicine in the State of Connecticut and a specialist in the field of internal medicine.

6.      Beginning in or about March, 2011, Bergwerk agreed, for compensation, to perform

medical services for Hala Alolabi in accordance with the appropriate standard of care of

physicians specializing in internal medicine.

7.      Between March 15, 2011 and June 14, 2011, Hala Alolabi was seen by Bergwerk at the

Norwalk Community Health Center for treatment of her symptoms that included, but were not

limited to, stuffy nose, painful ears, fever, chills and sweats.

8.      Between March 15, 2011 and June 14, 2011 Bergwerk diagnosed Mrs. Alolabi as

suffering from otitis media (ear infection) and otalgia (ear pain).

9.      Mrs. Alolabi presented to Bergwerk on March 15, 2011 for treatment of her congested

nose, painful ears, fever, chills and sweats.  On that date Bergwerk performed a physical

examination, noted that Mrs. Alolabi's left ear's tympanic membrane was red, diagnosed her

with otitis media and prescribed Amoxicillin and Tylenol.

10.     Mrs. Alolabi returned to Bergwerk at the Norwalk Community Health Center on March

31, 2011 and was again seen and examined by Bergwerk.

2

11.     On March 31, 2011 Mrs. Alolabi indicated that her left ear still hurt, she had frequent

headaches, she felt dizzy and her left nostril felt closed when she was sleeping.

12.     On March 31, 2011 Bergwerk performed a physical examination, noted that Mrs.

Alolabi's left tympanic membrane was no longer red, diagnosed her as having Otalgia (an

earache), continued the Amoxicillin prescription, and added the nasal corticosteroid, Flonase, to

treat her congestion.

13.     On March 31, 2011 Bergwerk told Mrs. Alolabi that it would take time for her ear pain to

resolve and did not give Mrs. Alolabi any instructions for any follow up treatment or

examinations, either with herself or with any other consulting physician.

14.     Mrs. Alolabi returned to Bergwerk at the Norwalk Community Health Center on June 14,

2011 and was again seen and examined by Bergwerk.

15.     June 14, 2011 Mrs. Alolabi indicated to Bergwerk that she was continuing to suffer from

earaches and she indicated that she had nausea and pain in her left ear canal.

16.     On June 14, 2011 Bergwerk performed a physical examination, noted that Mrs. Alolabi's

tympanic membranes were clear and again diagnosed her as having Otalgia (an earache).

17.     On June 14, 2011 Bergwerk wrote in the medical record that she suspected that Mrs.

Alolabi was suffering from a TMJ (dental) problem and suggested that she take Aleve and

continue to take the Flonase.  Bergwerk assured Mrs. Alolabi that it would take time for her ear

pain to resolve and did not give Mrs. Alolabi any instructions for any follow up treatment or

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW
THE HERITAGE BUILDING • 184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901 • (203) 325-4491 • JURIS NO. 58005

3

examinations, either with herself or with any other consulting physician.

18.     During this period of time between March 15, 2011 and June 14, 2011 Mrs. Alolabi was in fact exhibiting the classic signs and symptoms of nasopharyngeal cancer.

19.     The standard of care required that Bergwerk either order a head CT Scan or MRI for Mrs. Alolabi or refer her to an otolaryngology specialist (ear nose and throat physician) for consultation as of March 31, 2011 and shortly thereafter and Bergwerk failed to order these studies or refer her to an otolaryngology specialist.

20.     The standard of care required that Bergwerk either order a head CT Scan or MRI for Mrs. Alolabi or refer her to an otolaryngology specialist (ear nose and throat physician) for consultation again as of June 14, 2011 and shortly thereafter and Bergwerk failed to order these studies or refer her to an otolaryngology specialist.

21.     In December 2011, Mrs. Alolabi saw another physician at the Norwalk Community Health Center who referred her to an otolaryngology specialist.

22.     On or about January 19, 2012, the otolaryngology specialist to whom Mrs. Alolabi had been referred diagnosed her as suffering from metastatic cancer of the nasopharynx with metastasis to the neck.  Thereafter she began a course of debilitating care and treatment for her cancer.

23.     Mrs. Alolabi died of her metastatic cancer on December 4, 2012.

4

24.     As a health care provider, Bergwerk was required to provide to Hala Alolabi that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers and she failed to do so.

25.     Hala Alolabi's cancer metastasis and resulting death were caused by the negligence of Bergwerk in that she failed to exercise the degree of care, skill, and/or diligence ordinarily employed by internists under similar circumstances in one or more of the following respects:

a.   In that Bergwerk failed to order and conduct proper and timely diagnostic tests of Mrs. Alolabi;

b.   In that Bergwerk failed to properly and adequately evaluate, diagnose, treat, and monitor Mrs. Alolabi;

c.   In that Bergwerk failed to order proper and timely medical consultations for Mrs. Alolabi, including in early to mid-April 2011 and again in mid-June 2011;

d.   In that Bergwerk on March 31, 2011, Bergwerk failed to instruct Mrs. Alolabi to return to the clinic in two weeks if her symptoms continued;

e.   In that Bergwerk misdiagnosed Mrs. Alolabi's medical condition as dental in origin at the June 14, 2011 office visit; and

f.   In that Bergwerk failed to exercise that degree of care, skill, and/or diligence ordinarily employed by physicians under similar circumstances as Mrs. Alolabi

5

presented commencing in March 2011.

26.     As a result of Bergwerk's negligence as aforesaid, diagnosis, care, and treatment of Hala Alolabi's cancer was delayed.

27.     As a further result of Bergwerk's negligence as aforesaid, Hala Alolabi's cancer was permitted to advance from a treatable and curable stage to an advanced, metastatic, terminal stage.

28.     Because of Bergwerk's negligence as aforesaid, Hala Alolabi died on December 4, 2012.

29.     As an additional result of Bergwerk's negligence as aforesaid, Mrs. Alolabi suffered significant physical pain and anguish prior to her death.

30.     As a result of Bergwerk's negligence as aforesaid, Mrs. Alolabi suffered significant emotional pain and anguish prior to her death, including, but not limited to, the fear of death.

31.     As a consequence of Bergwerk's negligence as aforesaid, Mrs. Alolabi's ability to enjoy and participate in life's activities was permanently destroyed.

32.     As a further consequence of Bergwerk's negligence as aforesaid, Mrs. Alolabi's earning capacity was permanently destroyed causing present financial loss to her estate.

33.     As a result of Bergwerk's negligence as aforesaid, the Estate of Hala Alolabi has incurred a loss of the value of her household services.

34.     Because of Bergwerk's negligence as aforesaid, Hala Alolabi and/or her Estate incurred expenses for medical care and treatment of her cancer and medical complications relating thereto,

6

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW • (203) 325-4491 • JURIS NO. 58006
THE HERITAGE BUILDING • 184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901

including funeral expenses.

## SECOND COUNT:  ALAAE MAULA, INDIVIDUALLY

1-34.   Paragraphs 1 through 34 of the First Count are here incorporated by reference as

paragraphs 1 through 34 of this the Second Count of the Complaint.

35.     At all times mentioned herein, plaintiff Alaae Maula and Hala Alolabi were legally

married and living together.

36.     As a result of the negligence of Bergwerk, Alaae Maula has been deprived of the love,

comfort, society association, companionship and consortium of his wife, Hala Alolabi.


THE PLAINTIFFS,

BY _____
        RICHARD A. SILVER
        JONATHAN M. LEVINE
        SILVER GOLUB & TEITELL LLP
        184 ATLANTIC STREET
        STAMFORD, CONNECTICUT 06901
        (203) 325-4491

**CLAIMS FOR RELIEF**

The plaintiffs claim monetary damages against the defendant in excess of FIFTEEN

THOUSAND ($15,000.00) DOLLARS.

> ALAAE MAULA, ADMINISTRATOR OF THE
> ESTATE OF HALA ALOLABI, AND
> ALAAE MAULA, INDIVIDUALLY,
>
> BY: _RichoDA.Silver_
> RICHARD A. SILVER
> JONATHAN M. LEVINE
> SILVER GOLUB & TEITELL LLP
> 184 ATLANTIC STREET
> STAMFORD, CONNECTICUT 06901
> (203) 325-4491

TO THE CLERK:
PLEASE ENTER THE FOLLOWING APPEARANCE FOR THE PLAINTIFFS:

SILVER GOLUB & TEITELL, LLP
184 ATLANTIC STREET
STAMFORD CONNECTICUT 06901
(203) 325-4491 JURIS #58005

# EXHIBIT A

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW
THE HERITAGE BUILDING • 184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901 • (203) 325-4491 • JURIS NO. 58005

SUPERIOR COURT
STAMFORD - NORWALK
JUDICIAL DISTRICT

2014 SEP 19  P 3: 25

IN RE:       **ALAAE MAULA, ADMINISTRATOR OF THE ESTATE OF HALA**
             **ALOLABI, AND ALAAE MAULA, INDIVIDUALLY**

             **PETITION FOR EXTENSION OF STATUTE OF LIMITATIONS**

   **Alaae Maula, Administrator of the Estate of Hala Alolabi, and Alaae Maula,**

**Individually,** respectfully petition this Court, pursuant to C.G.S. § 52-190a(b), for a ninety (90) day

extension of the statute of limitations to permit a reasonable inquiry to determine in good faith

whether grounds exist for an action in the nature of a medical malpractice claim against one or more

of the following: Sally Bergwerk, M.D. and Norwalk Community Health Center, and any other

facilities, physicians, medical personnel, persons, professional corporations, entities, medical

institutions, hospitals and/or facilities, and/or health care personnel who have not yet been identified

who may have been involved in the medical and surgical care and treatment of Hala Alolabi.

   Venue lies in the Judicial District of Stamford/Norwalk as the petitioner resides in Norwalk,

Connecticut.

   The statute of limitations has not yet run on this claim as it involves the wrongful death of

Hala Alolabi on December 4, 2012 and medical care and treatment in 2011.

         THE PETITIONERS,

         BY: _____

          JONATHAN M. LEVINE
          SILVER GOLUB & TEITELL LLP
          184 ATLANTIC STREET
          STAMFORD, CT  06904
          (203) 325-4491 JURIS #58005

## **ORDER**

The foregoing petition having been presented to the Clerk pursuant to C.G.S. § 52-190a(b), it is hereby ordered GRANTED, extending the statute of limitations for claims resulting from the medical treatment rendered to Hala Alolabi by: Sally Bergwerk, M.D. and Norwalk Community Health Center, and any other facilities, physicians, medical personnel, persons, professional corporations, entities, medical institutions, hospitals and/or facilities, and/or health care personnel who have not yet been identified who may have been involved in the care and treatment of Hala Alolabi, *for 90 days from today's date.*

THE COURT,

_____
*Assist* CLERK / ~~JUDGE~~   *H. U ALA*

Dated:
*9/19/14*

# EXHIBIT B

THE HERITAGE BUILDING   •   184 ATLANTIC STREET   •   STAMFORD, CONNECTICUT 06901   •   (203) 325-4491   •   JURIS NO. 58005

SILVER GOLUB & TEITELL LLP   •   ATTORNEYS-AT-LAW

## CERTIFICATE

I hereby certify that a reasonable inquiry has been made, as permitted by the circumstances, and this inquiry has given rise to a good faith belief on my part that grounds exist for an action against each named defendant. Pursuant to Connecticut General Statutes § 52-190a, copies of the redacted written and signed opinions of similar health care providers, as defined in Connecticut General Statutes § 52-184c, are attached to this certificate as Exhibit B.

RICHARD A. SILVER

THE HERITAGE BUILDING • 184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901 • (203) 325-4491 • JURIS NO. 58005

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW

# EXHIBIT C

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW
184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901 • (203) 325-4491 • JURIS NO. 58005
THE HERITAGE BUILDING •

Richard A. Silver, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06901

**Re:   Mrs. Hala Alolabi**

Dear Mr. Silver:

I am a physician board certified in internal medicine.  I have been continuously board certified since 1996 and since then have practiced general internal medicine in both hospital and clinic settings.

## PERSONAL IDENTIFICATION REDACTED

I am familiar with the standard of care as it relates to internal medicine in 2011 in the United States.

I have reviewed medical records pertaining to the care and treatment Mrs. Hala Alolabi received from Sally Bergwerk, M.D. and the Norwalk Community Health Center during the period March 15, 2011 through September 20, 2012.

It is my opinion that on March 31, 2011, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, the standard of care required Dr. Bergwerk to either refer Mrs. Alolabi to an otolaryngology specialist for consultation or instruct Mrs. Alolabi to return to the clinic in two weeks if her symptoms continued.  Further, the standard of care required Dr. Bergwerk to make a note of that specific advice in Mrs. Alolabi's medical chart.  The standard of care then required that upon Mrs. Alolabi's return to the clinic and receiving information of her failure to improve, Dr. Bergwerk had the duty to refer Mrs. Alolabi to an otolaryngology specialist for consultation.

Further, it is my opinion that on June 14, 2011, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, the standard of care required Dr. Bergwerk to refer Mrs. Alolabi immediately to an otolaryngology specialist for consultation on an emergency basis.

Based on my review of these records, it is my opinion to a reasonable degree of medical probability that there is evidence of medical negligence on the part of Sally Bergwerk, M.D., and any persons or entities legally responsible for her actions, including Norwalk Community Health Center, in connection with the medical care she rendered Mrs. Hala Alolabi starting in March, 2011, including in that:

1. On March 31, 2011, Dr. Bergwerk failed to instruct Mrs. Alolabi to return to the clinic in two weeks if her symptoms continued and failed to make note of that specific advice in the medical chart;

2. Dr. Bergwerk failed to order proper and timely medical consultations for Mrs. Alolabi, including in early to mid-April 2011 and again in mid-June 2011;

3. Dr. Bergwerk failed to properly and adequately evaluate, diagnose, treat, and monitor Mrs. Alolabi;

4. Dr. Bergwerk failed to order and conduct proper and timely diagnostic tests of Mrs. Alolabi;

5. Dr. Bergwerk failed to order timely medical consultations for Mrs. Alolabi;

6. Dr. Bergwerk misdiagnosed Mrs. Alolabi's medical condition as dental in origin at the June 14, 2011 office visit; and

7. Dr. Bergwerk failed to exercise that degree of care, skill, and/or diligence ordinarily employed by physicians under similar circumstances as Mrs. Alolabi presented commencing in March 2011.

The opinions stated herein are based upon the information available to me at this time. Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.

NAME REDACTED

Richard A. Silver, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06901

**Re:     Mrs. Hala Alolabi**

Dear Mr. Silver:

I am a physician board certified in internal medicine.   I have been continuously board certified since 1998 and since then have practiced general internal medicine in both hospital and clinic settings.

## PERSONAL IDENTIFICATION REDACTED

I am familiar with the standard of care as it relates to internal medicine in 2011 in the United States.

I have reviewed medical records pertaining to the care and treatment Mrs. Hala Alolabi received from Sally Bergwerk, M.D. and the Norwalk Community Health Center during the period March 15, 2011 through September 20, 2012.

It is my opinion that on March 31, 2011, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, the standard of care required Dr. Bergwerk to instruct Mrs. Alolabi to contact her or return to the clinic in two weeks if her symptoms continued.   Further, the standard of care required Dr. Bergwerk to make a note of that specific advice in Mrs. Alolabi's medical chart.   The standard of care then required that upon receiving the information of Mrs. Alolabi's continuing medical condition, Dr. Bergwerk have Ms. Alolabi return to the clinic to have either a head CT Scan or MRI, or, in the alternative, refer Mrs. Alolabi to an otolaryngology specialist for consultation.

It is my opinion that on June 14, 2011, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record, including her continuing ear pain, and reasonable medical probability, the standard of care required Dr. Bergwerk to order either a head CT scan or MRI for

Mrs. Alolabi or refer Mrs. Alolabi immediately to an otolaryngology specialist for consultation.

Based on my review of these records, it is my opinion to a reasonable degree of medical probability that there is evidence of medical negligence on the part of Sally Bergwerk, M.D., and any persons or entities legally responsible for her actions, including Norwalk Community Health Center, in connection with the medical care she rendered Mrs. Hala Alolabi starting in March, 2011, including in that:

1. On March 31, 2011, Dr. Bergwerk failed to instruct Mrs. Alolabi to return to the clinic in two weeks if her symptoms continued and failed to make note of that specific advice in the medical chart;

2. Dr. Bergwerk failed to order proper and timely medical consultations for Mrs. Alolabi, including in early to mid-April 2011 and again in mid-June 2011;

3. Dr. Bergwerk failed to properly and adequately evaluate, diagnose, treat, and monitor Mrs. Alolabi;

4. Dr. Bergwerk failed to order and conduct proper and timely diagnostic tests of Mrs. Alolabi;

5. Dr. Bergwerk failed to order timely medical consultations for Mrs. Alolabi;

6. Dr. Bergwerk misdiagnosed Mrs. Alolabi's medical condition as dental in origin at the June 14, 2011 office visit; and

7. Dr. Bergwerk failed to exercise that degree of care, skill, and/or diligence ordinarily employed by physicians under similar circumstances as Mrs. Alolabi presented commencing in March 2011.

The opinions stated herein are based upon the information available to me at this time. Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.

NAME REDACTED

Richard A. Silver, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06901

**Re:    Mrs. Hala Alolabi**

Dear Mr. Silver:

I am a physician, board certified in Radiation Oncology, who specializes in head and neck oncology.

PERSONAL IDENTIFICATION REDACTED

PERSONAL IDENTIFICATION REDACTED

I am familiar with the standard of care as it relates to these areas of practice in 2011 in the United States.

I have reviewed the following medical records pertaining to the care and treatment Mrs. Hala Alolabi:

1. Norwalk Community Health Center: 3/15/11 - 9/20/2012;
2. Yale New Haven Hospital/Yale Cancer Center: 1/20/12 - 2/28/12;
3. Dana Farber Cancer Institute: 2/10/12, 2/29/12;
4. Brigham & Women's Hospital: 2/17/12 - 2/23/12 and 2/28/12 - 3/4/12;
5. Stanley I. Friedman, M.D.: 1/19/12;
6. Benjamin Judson, M.D.: 1/20/12 - 2/6/12; and
7. Yale New Haven Hospital Nasopharyngeal Biopsy: 1/27/12.

It is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi showed the classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on March 31, 2011 when she was seen, examined and treated by Dr. Sally Bergwerk. These signs and symptoms included her new onset dizziness, left sided ear pain and lack of continuing evidence of an ear infection. It is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist appropriately after the March 31, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Alolabi had a nasopharyngeal mass. Further timely and appropriate diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at an earlier and probably curable stage and she would have been offered timely and appropriate concurrent chemo-radiation. It is my opinion, based on my training and experience and with reasonable medical probability, that if such diagnosis and proper treatment had been commenced within a reasonable period of time thereafter, Mrs. Alolabi probably would have been cured of her disease.

Additionally, it is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi continued to show the classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on June 14, 2011 when she was again seen, examined and treated by Dr. Sally Bergwerk. It is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist immediately after the June 14, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Alolabi had a nasopharyngeal mass. Further timely and appropriate diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at an earlier and probably curable stage and she would have been offered timely and appropriate concurrent chemo-radiation. It is my opinion, based on my training and experience and with reasonable medical probability, that if such diagnosis and proper treatment had been commenced by early July 2011, Mrs. Alolabi would probably have been cured.

It is also my opinion, based on reasonable medical probability and Mrs. Alolabi's medical and physical condition as recorded in the medical record, including the lack of clinically evident nodes in March, 2011 and the presence of palpable nodes in December, 2011, that Mrs. Alolabi's cancer metastasized during the period between July, 2011 and December, 2011.

The medical records indicate that in January, 2012 Mrs. Alolabi was diagnosed as having T3 N2 MI undifferentiated nasopharyngeal cancer, Epstein Barr Virus strongly positive, P16 negative. In my opinion, based on my experience and the medical literature, if Mrs. Alolabi had been diagnosed with her cancer before it had metastasized (when it was "M0"), her chance of survival would have been significantly greater both by virtue of her M0 status and because Epstein Barr Virus positive nasopharyngeal carcinomas have a more favorable prognosis than other sub-types of nasopharyngeal cancers.

It is my opinion, based on my training, experience and reasonable medical probability, that after early July 2011 Mrs. Alolabi's cancer was not curable, even with aggressive treatment, and that the cessation of her chemotherapy regimen after March, 2012 was not the proximate cause of her death.

Furthermore, it is my opinion that had appropriate diagnosis and treatment been performed at any time prior to early July 2011, the prescribed chemotherapy regimen would have been less disabling than the chemotherapy that was eventually prescribed and administered to her in 2012.

The opinions stated herein are based upon the information available to me at this time.   Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.

NAME REDACTED

Richard A. Silver, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06901

Re:   Mrs. Hala Alolabi

Dear Mr. Silver:

I am a physician, board certified in otolaryngology, who specializes in head and neck surgical oncology.  I have been continuously board certified since 1987.

PERSONAL IDENTIFICATION REDACTED

I am familiar with the standard of care as it relates to these areas of practice in 2011 in the United States.

I have reviewed medical records pertaining to the care and treatment Mrs. Hala Alolabi received from Sally Bergwerk, M.D. and the Norwalk Community Health Center during the period 3/15/11 - 3/8/12 as well as the care and treatment she received from Yale New Haven Hospital/Yale Cancer Center (1/20/12 - 2/28/12), Dana Farber Cancer Institute (2/10/12, 2/29/12), and Brigham & Women's Hospital (2/17/12 - 2/23/12 and 2/28/12 - 3/4/12).

It is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi showed classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on March 31, 2011 when she was seen, examined and treated by Dr. Sally Bergwerk.  These signs and symptoms included her left sided ear pain with nasal obstruction and lack of continuing evidence of an ear infection.  Further, it is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist appropriately after the March 31, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Aloloabi had a nasopharyngeal mass.  Further diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at a treatable stage and she would have been offered appropriate radiation and chemotherapy and, with reasonable medical probability, she would have survived.

Additionally, it is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi continued to show classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on June 14, 2011 when she was again seen, examined and treated by Dr. Sally Bergwerk. It is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist immediately after the June 14, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Alolabi had a nasopharyngeal mass. Further timely and appropriate diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at a treatable stage and she would have been offered timely and appropriate radiation and chemotherapy. It is my opinion, based on my training and experience and with reasonable medical probability, that if such diagnosis and proper treatment had been commenced prior to early July 2011, Mrs. Alolabi would have been treated and she would have survived.

It is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record, including the lack of clinically evident nodes in March of 2011 and the presence of palpable nodes in December of 2011, and reasonable medical probability, that Mrs. Alolabi's cancer underwent clinical metastasis during the period between July 2011 and December 2011.

The opinions stated herein are based upon the information available to me at this time. Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.

NAME REDACTED

Richard A. Silver, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06901

**Re:   Mrs. Hala Alolabi**

Dear Mr. Silver:

I am a physician, board certified in Medical Oncology, who specializes in head and neck oncology.


### PERSONAL IDENTIFICATION REDACTED


I am familiar with the standard of care as it relates to these areas of practice in 2011 in the United States.

I have reviewed the following medical records pertaining to the care and treatment Mrs. Hala Alolabi:

1. Norwalk Community Health Center: 3/15/11 - 9/20/2012;
2. Stanley I. Friedman, M.D.: 1/19/12;
3. Benjamin Judson, M.D.: 1/20/12 - 2/6/12;
4. Yale New Haven Hospital Nasopharyngeal Biopsy: 1/27/12;
5. Dana Farber Cancer Institute: 2/10/12 - 2/29/12;
6. Brigham & Women's Hospital: Admission Extracts 2/17/12 - 2/23/12 and 2/28/12 - 3/4/12;
7. Brigham & Women's Hospital: Admission 2/17/12 - 2/23/12 (Vol. 1);
8. Brigham & Women's Hospital: 2/28/12 - 3/4/12 (Vol. 2);
9. Brigham & Women's Hospital: 2/17/12 - 3/4/12 Labs, 6/25/12 Outpatient record (Vol. 3);
10. Norwalk Hospital: 2/24/12 - 2/18/12 Admission;

11.   Norwalk Hospital: 3/8/12-8/23/12 labs, 4/24/12-4/26/12 admission, 8/24/12 ER, 10/8/12 ER;

12.   Yale-New Haven Hospital: 8/24/12 - 8/27/12 Admission, 9/13/12 outpatient record;

13.   Yale-New Haven Hospital: 9/29/12 - 10/3/12 Admission; and

14.   Yale-New Haven Hospital: 10/12/12 - 11/9/12 Admission.

I have also reviewed the following radiology studies:

1.   Yale- New Haven Hospital: studies dated 1/24/12 - 11/3/12, 22;

2.   Dana-Farber Cancer Center: (Disc 1 of 2) studies dated 2/8/12 - 2/27/12;

3.   Dana-Farber Cancer Center: (Disc 2 of 2) studies dated 1/24/12 PT – PET;

4.   Brigham and Women's Hospital: studies dated 2/17/12; and

5.   Norwalk Hospital: studies dated 2/24/12 - 8/24/12.

It is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi showed the classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on March 31, 2011 when she was seen, examined and treated by Dr. Sally Bergwerk.  These signs and symptoms included her new onset dizziness, left sided ear pain and lack of continuing evidence of an ear infection.  It is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist appropriately after the March 31, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Alolabi had a nasopharyngeal mass.  Further timely and appropriate diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at a treatable stage and she would have been offered timely and appropriate radiation and chemotherapy with curable intent.  It is my opinion, based on my training and experience and with reasonable medical probability, that if such diagnosis and proper treatment had been commenced within a reasonable period of time thereafter, Mrs. Alolabi would have been cured and would have survived greater than ten years.

Additionally, it is my opinion, based on Mrs. Alolabi's medical and physical condition as recorded in the medical record and reasonable medical probability, that Mrs. Alolabi continued to show the classic signs and symptoms for nasopharyngeal cancer during her visit to the Norwalk Community Health Center on June 14, 2011 when she was again seen, examined and treated by Dr. Sally Bergwerk.  It is my opinion that had Dr. Bergwerk referred Mrs. Alolabi to an otolaryngology specialist immediately after the June 14, 2011 office visit, that specialist would have performed an examination that would have determined that Mrs. Alolabi had a nasopharyngeal mass.  Further timely and appropriate diagnostic evaluations and testing would have revealed that the mass was cancer and that the cancer was at a treatable stage and she would have been offered timely and appropriate radiation and chemotherapy with curable intent.  It is my opinion, based on my training and experience and with reasonable medical probability, that if such diagnosis and proper treatment had been commenced prior to early July 2011, Mrs. Alolabi would have been treated with curable intent, would have been cured, and would have survived greater than ten years.

It is also my opinion, based on reasonable medical probability and Mrs. Alolabi's medical and physical condition as recorded in the medical record, including the lack of clinically evident lymph

nodes in March of 2011 and the presence of palpable lymph nodes in December of 2011, that Mrs. Alolabi's cancer underwent clinical metastasis during the period between July 2011 and December 2011.

The medical records indicate that in January of 2012 Mrs. Alolabi was diagnosed as having T3 N2 M1 undifferentiated nasopharyngeal cancer, Epstein Barr Virus strongly positive, P16 negative. In my opinion and experience, Epstein Barr Virus positive nasopharyngeal carcinomas respond well to chemo-radiation therapy and the chance of survival in such patients is higher due to better prognostic factors than other sub-types of nasopharyngeal cancers.

It is my opinion, based on my training, experience and reasonable medical probability, that after early July 2011 Mrs. Alolabi's cancer was not curable, even with aggressive oncologic treatment, and that the cessation of her chemotherapy regimen after March of 2012 was not the proximate cause of her death.

The opinions stated herein are based upon the information available to me at this time.   Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.

NAME REDACTED

RETURN DATE: OCTOBER 28, 2014 : SUPERIOR COURT
                                             :

ALAAE MAULA, ADMINISTRATOR : J.D. OF STAMFORD/NORWALK
OF THE ESTATE OF HALA ALOLABI AND :
ALAAE MAULA, INDIVIDUALLY :
                                             :

V. : AT STAMFORD
                                             :

SALLY R. BERGWERK, M.D. : SEPTEMBER 30, 2014

## NOTICE OF DEPOSITION

      PLEASE TAKE NOTICE that the plaintiff in the above-entitled matter will take the video-taped deposition of **Sally R. Bergwerk, M.D.** on Monday, November 24, 2014 at 10:00 a.m. at the offices of Silver Golub & Teitell, 184 Atlantic Street, Stamford, Connecticut.

      PLEASE TAKE FURTHER NOTICE, that pursuant to Connecticut Practice Book §13-27(f)(2), said deposition will be taken before an authorized officer and will be recorded by videotape and stenographically.

      PLEASE TAKE FURTHER NOTICE, that pursuant to Connecticut Practice Book § 13-27(g), the deponent is required to produce the following documents and materials[1] at the deposition:

1.      Her **entire** file regarding this matter, including, but not limited to:

---

[1] These requests include all documents and materials regardless of the original source, and include information stored digitally or electronically. These requests specifically exclude any materials which are privileged or otherwise not subject to discovery by law; however, the deponent is requested to produce (or create a log of) any information which is claimed to be non-discoverable so that it may be identified (without disclosing the substance of the material) for determination, if necessary, by the court.

SILVER GOLUB & TEITELL LLP • ATTORNEYS AT LAW • (203) 325-4491 • JURIS NO. 58005
184 ATLANTIC STREET • STAMFORD, CONNECTICUT 06901 •
THE HERITAGE BUILDING •

a.   All original records of Norwalk Community Health Center, including but not limited to, typed and handwritten notes, surgery records, photographs, prescription records, telephone messages, computerized records and billing records in reference to **Hala Alolabi;**

b.   All records and documents in her possession pertaining to the case, *other than documents protected by the attorney-client privilege, work product or other applicable privilege;*

c.   Any correspondence to anyone in reference to the care and treatment of **Hala Alolabi**, *other than documents protected by the attorney-client privilege, work product or other applicable privilege;*

d.   Any notes or memoranda made in reference to the care and treatment of **Hala Alolabi**, *other than documents protected by the attorney-client privilege, work product or other applicable privilege;*

e.   Copies of any medical articles or chapters of medical texts consulted or utilized by the deponent, either at the time of or subsequent to the events of this matter, regarding the issues of this case; and

f.   Any and all non-privileged statements, as defined in Practice Book § 13-1, of any party in this lawsuit concerning this action or its subject matter, including statements

2

made to a representative of an insurance company prior to involvement of a defense attorney in this matter.

2. Curriculum vitae.

3. List of continuing medical education courses taken for the past ten years.

4. A copy of her **entire** malpractice insurance contract that was in effect in 2011.

5. All documents reviewed by deponent in preparation for her deposition.

6. Copies of any and all contracts between deponent and Norwalk Community Health Center relating to her services at Norwalk Community Health Center.

Said deposition shall take place before an authorized officer.

Said deposition shall continue from day to day until completed.

THE PLAINTIFFS,

BY

RICHARD A. SILVER
SILVER GOLUB & TEITELL, LLP
STAMFORD, CONNECTICUT 06901
(203) 325-4491 JURIS NO. 58005

3

## CERTIFICATION

This is to certify that a copy of the foregoing Notice of Deposition has been served with

the Complaint upon the following defendants:

**Sally R. Bergwerk, M.D.**
35 Old Ridgefield Road
Wilton, CT 06897
OR
Norwalk Community Health Center
120 Connecticut Avenue
Norwalk CT 06854

RICHARD A. SILVER

SILVER GOLUB & TEITELL LLP  •  ATTORNEYS AT LAW  •  184 ATLANTIC STREET  •  STAMFORD, CONNECTICUT 06901  •  (203) 325-4491  •  JURIS NO. 58005  •  THE HERITAGE BUILDING

4

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD            ss:  Norwalk              October 1st, 2014

Then and there, by virtue hereof, I made service of the within
and foregoing original WRIT, SUMMONS and COMPLAINT, Exhibits A,B,C
and NOTICE OF DEPOSITION ., CERTIFICATION

by leaving a true and attested copy

With and in the hands of:

SALLY R. BERGWERK, M.D., NORWALK COMMUNITY HEALTH CENTER, 120 Connecticut
                        Avenue, Norwalk, CT 06854
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

the within named defendant(X).

The within and foregoing is the original WRIT, SUMMONS and
COMPLAINT, Exhibits A,B,C and NOTICE OF DEPOSITION, CERTIFICATION

with my doings hereon endorsed.

FEES:
Travel        16.00
Copies        30 00
Service       40.00
Endorsem      12.00
Other
            ------------
Total      $ 98.00

Attest:

*Siegrun G. Pottgen*
Siegrun G. Pottgen
State Marshal, Fairfield County

Exhibit B

| | |
|---|---|
| **1. ISSUE DATE:** 12/20/2010 | |
| **2a. FTCA DEEMING NOTICE NO.:**<br>1-F00000995-10-02 | DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>HEALTH RESOURCES AND SERVICES<br>ADMINISTRATION |
| **2b. Supersedes:** [ ] | |
| **3. COVERAGE PERIOD:**<br>FROM: 1/1/2011 THROUGH: 12/31/2011 | |
| **4. NOTICE TYPE:** Renewal | |
| **5a. ENTITY NAME AND ADDRESS:**<br>NORWALK COMMUNITY HEALTH CENTER, INC.<br>121 WATER STREET<br>NORWALK, CT 06854-3013 | **HRSA**<br>NOTICE OF DEEMING ACTION |
| **6. ENTITY TYPE:** Grantee | **FEDERAL TORT CLAIMS ACT AUTHORIZATION:**<br>Federally Supported Health Centers Assistance Act<br>(FSHCAA), as amended,<br>Sections 224(g)-(n) of the Public Health Service (PHS)<br>Act, 42 U.S.C. § 233(g)-(n) |
| **7. EXECUTIVE DIRECTOR:**<br>Lawrence Cross | |
| **8a. GRANTEE ORGANIZATION:**<br>NORWALK COMMUNITY HEALTH CENTER, INC. | |
| **8b. GRANT NUMBER:** H80CS12844 | |

**9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:**

    a. The authorizing program legislation cited above.
    b. The program regulation cited above, and,
    c. HRSA's FTCA-related policies and procedures.

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail.

**10. Remarks:**

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Cheryl Dammons, Deputy Associate Administrator for Primary Health Care on:*
**12/20/2010 8:45:38 AM**

Ex. A1

| | |
|---|---|
| **1. ISSUE DATE:** 9/28/2011 | |
| **2a. FTCA DEEMING NOTICE NO.:**<br>1-F00000995-11-01 | |
| **2b. Supersedes:** [ ] | |
| **3. COVERAGE PERIOD:**<br>FROM: 1/1/2012 THROUGH: 12/31/2012 | **DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>HEALTH RESOURCES AND SERVICES<br>ADMINISTRATION** |
| **4. NOTICE TYPE:** Renewal | |
| **5a. ENTITY NAME AND ADDRESS:**<br>NORWALK COMMUNITY HEALTH CENTER, INC.<br>120 CONNECTICUT AVE<br>NORWALK, CT 06854-1525 | **HRSA**<br><br>NOTICE OF DEEMING ACTION |
| **6. ENTITY TYPE:** Grantee | **FEDERAL TORT CLAIMS ACT AUTHORIZATION:**<br>Federally Supported Health Centers Assistance Act<br>(FSHCAA), as amended,<br>Sections 224(g)-(n) of the Public Health Service (PHS)<br>Act, 42 U.S.C. § 233(g)-(n) |
| **7. EXECUTIVE DIRECTOR:**<br>Cross Lawrence | |
| **8a. GRANTEE ORGANIZATION:**<br>NORWALK COMMUNITY HEALTH CENTER, INC. | |
| **8b. GRANT NUMBER:** H80CS12844 | |

**9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:**

   a. The authorizing program legislation cited above.
   b. The program regulation cited above, and,
   c. HRSA's FTCA-related policies and procedures.

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail.

**10. Remarks:**

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Jim Macrae, Associate Administrator for Primary Health Care on: 9/28/2011 7:34:27 AM*

Ex. A2

| | |
|---|---|
| **1. ISSUE DATE:** 8/28/2012 | |
| **2a. FTCA DEEMING NOTICE NO.:**<br>1-F00000995-12-01 | |
| **2b. Supersedes:** [ ] | |
| **3. COVERAGE PERIOD:**<br>FROM: 1/1/2013 THROUGH: 12/31/2013 | DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>HEALTH RESOURCES AND SERVICES<br>ADMINISTRATION |
| **4. NOTICE TYPE:** Renewal | |
| **5a. ENTITY NAME AND ADDRESS:**<br>NORWALK COMMUNITY HEALTH CENTER, INC.<br>120 CONNECTICUT AVE<br>NORWALK, CT 06854-1625 | **HRSA**<br><br>**NOTICE OF DEEMING ACTION** |
| **6. ENTITY TYPE:** Grantee | **FEDERAL TORT CLAIMS ACT AUTHORIZATION:**<br>Federally Supported Health Centers Assistance Act<br>(FSHCAA), as amended,<br>Sections 224(g)-(n) of the Public Health Service (PHS)<br>Act, 42 U.S.C. § 233(g)-(n) |
| **7. EXECUTIVE DIRECTOR:**<br>Cross Lawrence | |
| **8a. GRANTEE ORGANIZATION:**<br>NORWALK COMMUNITY HEALTH CENTER, INC. | |
| **8b. GRANT NUMBER:** H80CS12844 | |

**9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:**

    a. The authorizing program legislation cited above.
    b. The program regulation cited above, and,
    c. HRSA's FTCA-related policies and procedures.

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail.

**10. Remarks:**

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Jim Macrae, Associate Administrator for Primary Health Care on: 8/28/2012 8:24:23 AM*

Ex. A3

| | |
|---|---|
| **1. ISSUE DATE:** 9/10/2013 | |
| **2a. FTCA DEEMING NOTICE NO.:**<br>1-F00000995-13-01 | |
| **2b. Supersedes: [ ]** | |
| **3. COVERAGE PERIOD:**<br>FROM: 1/1/2014 THROUGH: 12/31/2014 | DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>HEALTH RESOURCES AND SERVICES<br>ADMINISTRATION |
| **4. NOTICE TYPE:** Renewal | |
| **5a. ENTITY NAME AND ADDRESS:**<br>NORWALK COMMUNITY HEALTH CENTER, INC.<br>120 CONNECTICUT AVE<br>NORWALK, CT 06854-1525 | **HRSA**<br><br>NOTICE OF DEEMING ACTION<br><br>**FEDERAL TORT CLAIMS ACT AUTHORIZATION:**<br>Federally Supported Health Centers Assistance Act<br>(FSHCAA), as amended,<br>Sections 224(g)-(n) of the Public Health Service (PHS)<br>Act, 42 U.S.C. § 233(g)-(n) |
| **6. ENTITY TYPE:** Grantee | |
| **7. EXECUTIVE DIRECTOR:**<br>Lawrence Cross | |
| **8a. GRANTEE ORGANIZATION:**<br>NORWALK COMMUNITY HEALTH CENTER, INC. | |
| **8b. GRANT NUMBER:** H80CS12844 | |

**9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:**

    a. The authorizing program legislation cited above.
    b. The program regulation cited above, and,
    c. HRSA's FTCA-related policies and procedures.

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail.

**10. Remarks:**

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Jim Macrae, Associate Administrator for Primary Health Care on:* 9/10/2013 8:27:20 AM

Ex. A4